HOOD v. CAMPBELL et al.   (No. 7866.)

Court of Civil Appeals of Texas.   San Antonio.
Nov. 30, 1927.

Rehearing Granted Jan. 25, 1928.

Appellees' Motion for Rehearing Denied
Feb. 29, 1928.

1. Brokers ⟨key⟩58—Brokers held not entitled to real estate commission, where one contracting to purchase was corporation prohibited from holding such land.

Brokers, suing for commission for real estate sold, *held* not entitled to commission, where the one contracting for purchase of the property was a corporation which was by law prohibited from holding land for purpose for which realty was to be used.

2. Brokers ⟨key⟩58—To entitle real estate broker to commission, contract for sale of land must be of such mutuality and definiteness as to be enforceable.

To entitle real estate broker to commission, contract for sale of realty must be of such mutuality and definiteness that either party would have a contract enforceable against the other on its breach.

3. Contracts ⟨key⟩134—Contract which could not be authorized by parties cannot be ratified by either.

A contract which could not have been authorized by either party thereto cannot be ratified by either.

Appeal from District Court, Cameron County; A. M. Kent, Judge.

Action by W. H. Campbell and others against A. J. Hood. Judgment for plaintiffs, and defendant appeals. Reversed and rendered.

Spears & Montgomery, of San Benito, and H. L. Yates, of Brownsville, for appellant.

Seabury, George & Taylor, of Brownsville, for appellees.

COBBS, J. Appellees sued appellant for commissions for services rendered in the sale of approximately 2,500 acres of land that appellant listed with appellees, under an agreement that he would take $45 per acre for said land and would pay $2.50 per acre as commissions for finding a purchaser. In pursuance thereof appellees procured James Dickinson Farm Mortgage Company, a private corporation, of Brownsville, which was ready, willing, and able to purchase said land at the stipulated price. Whereupon the

James-Dickinson Farm Mortgage Company entered into a written contract for the purchase of the land upon terms satisfactory to appellant, binding the said appellant to sell said land to said corporation. As a part of the consideration thereof $1,500 was to be paid in cash, and $10,000 was to be paid in first vendor's lien notes which the corporation owned against land in the Rio Grande Valley, aggregating some $50,000; which $10,000 vendor's lien notes were to be selected by appellant from said $50,000 of said vendor's lien notes.

At the time of making said contract appellant agreed to pay appellees, as their commission, $6,500 of the $10,000 worth of vendor's lien notes, permitting appellees to select that amount from the $10,000 of vendor's lien notes from said corporation; appellees agreeing if they were permitted to select the $6,500 of notes they would take the same in lieu of the $2.50 per acre commission, as originally agreed upon.

It is alleged that appellant thereafter breached the contract and refuses and continues to refuse to carry out the same or to pay appellees their commission of $2.50 per acre, as originally agreed upon for the sale of the 2,500 acres of land, or to pay the reasonable market value of the $6,500 of vendor's lien notes, which the appellees would have selected had the same been tendered to them by appellant.

Appellant filed a general demurrer, and, among other special exceptions, alleged that James-Dickinson Farm Mortgage Company was a private corporation and not permitted to acquire appellant's land; that it was forbidden by the statutes of Texas to own appellant's land.

The case was tried by the court without a jury. At the conclusion of the testimony, the undisputed evidence showing 90 cents on the dollar to be the least valuation placed on the $6,500 vendor's lien notes, amounting to $5,850, the court instructed the jury to return a verdict in favor of appellees for that amount, with interest from May 1, 1925, and the judgment of the court was rendered in accordance therewith.

Laying out of sight the technical objections to the sufficiency of pleading and other matter, at the present time, the real defense of appellant on the merits of the case was to the effect that James-Dickinson Farm Mortgage Company, being a private corporation, was under the law without power to purchase the land from appellant and acquire the title thereto, and therefore the written contract made and entered into by appellant and said corporation was not binding upon appellant and for that reason the commission contract was unenforceable.

Of course, in view of the well-settled law that it is fundamental error to instruct a verdict where there is any evidence to support it, the assignment of errors is unnecessary, still it is the better practice to assign such errors.

A conveyance of land in Texas to a corporation is not void, but only voidable, which sale cannot be questioned by a purchaser seeking to acquire the land. Such corporation is forbidden to acquire land generally as a business, but not to sell its lands. It may acquire land in due course of business to secure payment of debts, or when the land purchased is necessary to enable it to do business in this state, or when the land does not extend more than two miles beyond the limits of an incorporated city or town, and is to be a subdivision of such city or town. So it cannot be said the purchase of any land is per se void. It may be shown to be void by the sovereign power, but it cannot be shown so by a proposed private person, who seeks in a collateral proceeding to avoid the payment of the broker's commission on the ground that the land sought to be acquired belonged to a private corporation that had acquired it in excess of its right to hold it.

We do not think the contract between the parties, the one to sell and the other to acquire, is void to the extent of invalidating the broker's right to his commission based upon such a sale. Appellant is in no position to plead its invalidity thereby to escape his obligation. This is a function of government, and none but the sovereign, or perhaps some one interested in the corporation, may call it in question. The defense is attempting here collaterally to destroy its own contract which was based upon an entirely valid consideration for independent services. Appellant has no interest in the corporation, and the state has not by any direct proceeding attempted to challenge any of the holdings of land possessed by James-Dickinson Farm Mortgage Company. While the state would be interested in preventing the use of a private corporation for acquiring lands and doing a land business under its charter, we can see no fact presented in this case to justify appellant's plea for forfeiture. Fritt v. Palmer, 132 U. S. 282, 10 S. Ct. 93, 33 L. Ed. 317; Nat. Bank v. Matthews, 98 U. S. 621, 25 L. Ed. 188; Russell v. Texas & P. R. Co., 68 Tex. 646, 5 S. W. 686; Scott v. Farmers' Bank, 97 Tex. 31, 75 S. W. 7, 104 Am. St. Rep. 835; Schneider v. Sellers, 98 Tex. 380, 84 S. W. 417; Schwab Clothing Co. v. Claunch (Tex. Civ. App.) 29 S. W. 922; Wooten v. Dermott Town Site Co. (Tex. Civ. App.) 178 S. W. 598; Buchanan v. Houston & T. C. Railway Co. (Tex. Civ. App.) 180 S. W. 625; Westbrook v. Mo. Tex. Land Co. (Tex. Civ. App.) 195 S. W. 1154; Frost v. Thomas (Tex. Civ. App.) 238 S. W. 305; Staacke v. Routledge, 111 Tex. 489, 241 S. W. 994; Gando Land Co. v. Smith (Tex. Civ. App.) 290 S. W. 924.

Appellant entered into the written contract with the corporation for the purchase of the

land, and likewise entered into the independent contract with appellees to pay the stipulated commissions for bringing the parties together. It was no fault of appellees that the contract was not consummated. The state was not moving in the matter and the corporation would have secured title. Appellant, under the facts of this case, is estopped to dispute the power of the corporation to purchase said lands. It was of no concern of his that the corporation would subject itself to the penalties of the law in such cases.

We have no case here where the corporation itself is seeking to enforce an alleged invalid executory contract where the proof affirmatively showed the property was not for the purpose of collecting a debt or for the purposes of the corporation, but a collateral proceeding attacking the validity of the contract solely between the corporation and a third party who will not be heard in this collateral proceeding to attack the same, in so far as it affects the rights of a third party.

So it is made very clear by the undisputed testimony, and so found by the court, that appellees found and procured a purchaser for appellant's land, who was accepted by appellant, who entered into a written contract with appellant to purchase said land upon satisfactory terms agreed upon by appellant and the purchaser. This estops appellant from denying the purchaser's ability or willingness to complete the contract. 4 R. C. L. § 49. Suppose the contract is of questionable validity so far as the corporation is concerned, still appellees earned their commission agreed upon with the appellant and are entitled to recover it. Warmack v. Perkins, 132 Ark. 378, 201 S. W. 120; Kolp v. Brazer (Tex. Civ. App.) 161 S. W. 899; Brady v. Richey (Tex. Civ. App.) 187 S. W. 508; South Dakota-Tex. Oil Co. v. Hackworth (Tex. Civ. App.) 248 S. W. 813; Conkling v. Krakauer, 70 Tex. 739, 11 S. W. 117; 4 R. C. L. § 49, p. 309; Leuschner .v. Patrick (Tex. Civ. App.) 103 S. W. 664; Watkins Land Co. v. Thetford, 43 Tex. Civ. App. 536, 96 S. W. 72; Handley v. Shaffer, 177 Ala. 636, 59 So. 286; 9 C. J. 596; Hamburger v. Thomas, 103 Tex. 285, 126 S. W. 561.

The corporation always asserted its willingness to carry out the contract. Where the principal accepts the broker's customer and enters into a contract with him, the question of the customer's ability, readiness, and willingness is no longer open to question in a controversy between the broker and the principal for the commission. This general rule has been recognized and followed in Texas in the following cases: Albritton v. First Nat. Bank, 38 Tex. Civ. App. 614, 86 S. W. 646; Kolp v. Brazer (Tex. Civ. App.) 161 S. W. 899; Wolfman v. Callahan (Tex. Civ. App.) 204 S. W. 777; Waurika Oil Ass'n v. Ellis (Tex. Civ. App.) 232 S. W. 364; Keener v. Cleveland (Tex. Com. App.) 250 S. W. 151.

The obligation of appellant to pay to appellees $6,250 in cash for finding him a purchaser for his property on terms satisfactory to himself has never been substituted or set aside or novated, because the same was only to be novated and substituted by the appellant by the delivery by appellant to appellees of the $6,500 vendor's lien notes. These notes, with an additional $3,500 vendor's lien notes, were to be selected by appellant from $50,000 worth of notes held by the corporation. Appellant refused to carry out his contract and refused to make the selection of said $10,000 worth of notes.

We overrule the appellant's contention that appellees were the general agents of the corporation in selling its lands, which appellant claims under the transaction to be illegal. The testimony does not show any such general agency on the part of appellees.

We overrule appellant's proposition that the pleading was too indefinite to show who executed the notes, what land secured their payment, when executed, when due, and whether barred by limitation. We think the allegations sufficient for the admission of the testimony in this case, and the error, if any, was entirely harmless.

It is contended that, owing to the clause in the contract reciting that W. S. Corkill owned a small strip of land dividing this land, and "it is understood between the parties hereto that he is to be dealt with in some way before the closing of this deal," the appellant was given the right to refuse to carry out the contract. This contention is without merit.

Appellees have made no definite and specific reply to this proposition. Appellees are not suing except incidently upon the contract made between James-Dickinson Farm Mortgage Company and appellant, and the provisions of that contract are only incidental and collateral to this suit. It is sufficient that appellees brought the parties together and they entered in a contract satisfactory to themselves. The broker performed his contract; did his duty.

We have examined and considered each and all of appellant's assignments of error and overrule them. The case seems fairly tried and no reversible errors are presented, so the judgment of the court is affirmed.

## On Motion for Rehearing.

Appellant has filed an especially strong motion, and argument in support thereof, for a rehearing, covering all the questions in the case. Appellant criticizes our opinion in the statement that the case was tried "without" a jury instead of *with* a jury, which is obvious that the word without was a typographical error not detected at the time. The paragraph following recites it was tried with a jury, and further on said:

"In view of the well-settled law that it is fundamental error to instruct a verdict where there is any evidence to support it."

[1, 2] We are inclined to believe, from a further consideration of the record, that there is some evidence upon several issues pro and con, which of itself might cause a reversal of the judgment, which is not necessary to set out here because, for the reasons given hereinafter, we think the judgment of the trial court should be reversed and rendered on the ground set out in the very first proposition of appellant, to the effect that James-Dickinson Farm Mortgage Company, the alleged purchaser of defendant's land, was a private corporation, as discussed in our opinion, and hence was prohibited by the laws of Texas from owning land generally, only for certain purposes, and that exception does not exist here. We know of no case that states the rule as to what should constitute the elements of a contract for the sale of land to entitle a broker to his commission better than is stated in Brackenridge v. Claridge, 91 Tex. 527, 44 S. W. 819, 43 L. R. A. 593. In other words, the contract should be one of such mutuality and definiteness as that either party would have a contract enforceable against the other on its breach.

[3] Now, then, the contract in question was one which the corporation could not make: It could not hold, enjoy, or possess the land under inquiry, and no specific performance could be had against it. It is not a case of defect of title, such as was discussed in Brackenridge v. Claridge, supra, but, on the contrary, it is a case involving the validity of the contract, where neither party can compel specific performance of the contract for the sale of the land by the other, and that, of course, would affect the broker's rights to commissions, since he had not brought together parties who could make an enforceable contract against each other. The objection to the contract is, not merely that the corporation ought not to have made it, but that it could not make it. The contract cannot be ratified by either party, because it could not have been authorized by either. No performance on either side can give the unlawful contract any validity, or be the foundation of any right upon it. In the case of McCormick v. Market National Bank, 165 U. S. 538, 17 S. Ct. 433, 41 L. Ed. 817, it is said:

"The doctrine of ultra vires, by which a contract made by a corporation beyond the scope of its corporate powers, is unlawful and void, and will not support an action, rests, as this court has often recognized and affirmed, upon three distinct grounds: The obligation of any one contracting with the corporation to take notice of the legal limits of its powers; the interest of the stockholders not to be subject to risks which they have never undertaken; and, above all, the interest of the public, that the corporation shall not transcend the powers con-

ferred upon it by law. Pearce v. Madison & I. R., 21 How. 441 [16 L. Ed. 184]; Pittsburg, Chicago, etc., R. v. Keokuk & H. Bridge Co., 131 U. S. 371, 384 [9 S. Ct. 770] 33 L. Ed. 157; Central Transp. Co. v. Pullman's Palace Car Co., 139 U. S. 24, 48 [11 S. Ct. 478] 35 L. Ed. 55."

In Gibbs v. Consolidated Gas Co., 130 U. S. 396, 9 S. Ct. 553, 32 L. Ed. 979, the court quoted from Irwin v. Williar, 110 U. S. 499, 4 S. Ct. 160, 28 L. Ed. 225, saying:

When a broker "is privy to the unlawful design of the parties, and brings them together for the very purpose of entering into an illegal agreement, he is particeps criminis, and cannot recover for services rendered or losses incurred by himself on behalf of either in forwarding the transaction."

And then stated:

"It is clear from the evidence adduced by the plaintiff that he falls within the category last described; and he makes profert of the fact that the first suggestion in the line of manipulating the gas interests of Baltimore came from himself. Hence, if the contract he brought about was forbidden by statute, or by public policy, it is evident that he could not recover."

In Street v. Houston Ice & Brewing Co. (Tex. Civ. App.) 55 S. W. 516, appellants brought suit against appellee, alleging that they brought about between appellee and another brewing company, an agreement by which the products of each were maintained at a standard and unvarying price, and sought to recover reasonable compensation for the service rendered. The court remarked that the contract was in contravention of the statutes with reference to conspiracies against trade; that appellants procured the combination between the companies, that is, brought about the commission of an illegal act, which could not be regarded as the consideration of a contract by which they would be entitled to receive compensation.

Speaking of the agreement by a private corporation to purchase land, the Circuit Court of Appeals said, in Jackson v. Western Union Tel. Co., 269 F. 598:

"The agreement was an executory one of a private corporation to purchase lands not necessary to enable it to do business in Texas, and it was not one for the purchase of land in due course of business to secure the payment of debt. It was one to do a thing prohibited by the above set out statute law [Rev. St. 1911, arts. 1175, 1176, 1177, 1164]. The contract was not merely ultra vires in the proper sense; that is to say, outside the object of the corporation's creation as defined in the law of its organization, but was explicitly prohibited by statute. Such a contract is not voidable only, but is wholly void, and of no legal effect." Louisville, etc., R. Co. v. Kentucky, 161 U. S. 677, 16 S. Ct. 714, 40 L. Ed. 849.

The test applied by the Supreme Court in Moss v. Wren, 102 Tex. 567, 120 S. W. 847, on rehearing was: "Could the seller sue the

purchaser for specific performance of the contract?" There are many cases holding that the contract procured must be enforceable before the broker will be entitled to his commission, among them being Jackson v. Biggerstaff (Tex. Civ. App.) 168 S. W. 42; Crawford v. Woods (Tex. Civ. App.) 185 S. W. 667; English v. Realty Co., 55 Tex. Civ. App. 137, 117 S. W. 996; Greene v. Waggoner Refining Co. (Tex. Civ. App.) 278 S. W. 492; and numerous others.

We do not think it would accomplish any useful purpose to reverse and remand this case, because the validity of the contract would still be an unsettled question.

For the reasons given, the motion for a rehearing is granted, our opinion and judgment set aside, and judgment is here rendered for appellant.